## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## BEAUFORT DIVISION

| | | |
|---|---|---|
| **Stephen Baske** | § | |
| | § | |
| *Plaintiff,* | § | C.A. No. ----     9:25-cv-1361-RMG |
| | § | |
| **v.** | § | |
| | § | |
| **Jasper County, a political subdivision of the State of South Carolina;** | § | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND MONETARY DAMAGES** |
| | § | |
| **Jasper County Fire-Rescue;** | § | **(JURY TRIAL DEMANDED)** |
| | § | |
| **Jasper County Fire Chief Russell Wells, both individually and in his official capacity as Jasper County Emergency Services Director and Fire Chief;** | § | |
| | § | |
| **Jasper County Administrator Andrew P. Fulghum, both individually and in his official capacity as Jasper County Administrator;** | § | |
| | § | |
| **Jane Does and John Does, both individually and in their official capacities;** | § | |
| | § | |
| *Defendants.* | § | |

## <u>INTRODUCTION</u>

1.     The Complaint brings before this Court claims to be tried by a jury of United States Constitutional violations by a municipality and municipal actors acting under color of state law, specifically violations of the First Amendment, as made applicable to the States by the Fourteenth Amendment, and Fourteenth Amendment violation of Due Process.   Plaintiff also asserts claims that Defendants violated Plaintiff's rights under South Carolina's Constitution, Article I, Section 2's guarantee of freedom of speech and Article I, Section 3's guarantee of the right to due process

9:25-cv-01361-RMG     Date Filed 03/05/25     Entry Number 1     Page 2 of 40

to protected liberty interests including, but not limited to, (1) constitutionally protected freedom of speech guaranteed by the First Amendment of the U.S. Constitution and Article I, Section 2 of the South Carolina Constitution; (2) his protected liberty interest in his good name and personal and professional reputation; and (3) his liberty interest in expressing political speech at his place of employment created by S.C. Code of Laws §16-17-560, all made actionable by 42 U.S.C. § 1983 et seq.[1]

2.      Prior to his termination, Plaintiff was a public employee with Defendant Jasper County Fire-Rescue ("JCFR") and was terminated by Defendants without due process in retaliation for First Amendment protected speech while off-duty relating to matters of public concern regarding: (1) the societal dangers and harm of online pornographic streaming sites and apps like "Onlyfans;" (2) public policy and controversies relating to corruption in the healthcare industry, Covid-19 related masking and vaccine mandates, economic and other damages caused by the "shuttering" of unfavored businesses and industries during "lockdowns," and the alleged profiteering of healthcare providers generally and specifically relating to Covid-19 masking and vaccine mandates; (3) public policies and controversies relating to U.S. support and military aid to Ukraine in light of its alleged historical and present associations with Nazi-aligned factions including criticisms of current Ukrainian leadership; and (4) U.S.

---

[1] The municipality liability is not based upon vicarious liability under the doctrine of respondeat superior which is inapplicable to § 1983 claims. Under *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978); a municipal government can be held liable under Section 1983 if a plaintiff can demonstrate that a deprivation of a federal right occurred as a result of a "policy" of the local government's legislative body or those local officials whose acts may fairly be said to be those of the municipality.  Sovereign immunity does not protect the defendants in this case.  *See Martinez v. California*, 444 U.S. 277, 284 (1980) (holding that "[c]onduct by persons acting under color of state law which wrongful under 42 U.S.C. § 1983" and other federal civil rights legislation "cannot be immunized by state law").

President Trump's favorable foreign policies toward Israel, including U.S. recognition of Jerusalem as the capital of Israel.

## PARTIES

3.    Plaintiff Stephen Baske is a citizen of the United States of America and of South Carolina, and is a resident of Beaufort County, South Carolina.

4.    Plaintiff is a United States Navy veteran who served for eight years in medical and firefighting roles. Prior to JCFR, he was employed as a firefighter and EMT with the City of Beaufort for approximately 15 years. In 2018, Plaintiff volunteered in Israel with Volunteers for Israel ("VFI") where he worked with the Israel Defense Forces ("IDF"). Prior to his termination on February 6, 2025, Plaintiff had been working with JCFR for two years honorably and without incident.

5.    Plaintiff was not an agency-head or in a policy making position during his employment with JCFR.

6.    Plaintiff is suing in order to vindicate his constitutional rights.

7.    Defendant Jasper County is a political subdivision of the State of South Carolina with the ability to sue and be sued for declaratory, injunctive and monetary damages.  It is not subject to sovereign immunity.

8.    Defendant Jasper County Fire-Rescue ("JCFR") is part of the Jasper County Emergency Services Department which is a subdivision of the Jasper County municipal government and was created by county ordinance in 2005 by combining Emergency Medical Services (EMS), Ridgeland Rural Fire District, Cherry Point Fire District, Hardeeville Rural Fire District, Tillman Volunteer Fire Department, Robertville-Pineland Vol. Fire Department, Coosawhatchie Vol. Fire

Department, Point South Vol. Fire Department, Roseland Vol. Fire District, and the Grays Vol. Fire Department.

9.      Defendant JCFR is headquartered and operates in Jasper County, South Carolina and is a subdivision of Jasper County municipal government with the ability to sue and be sued for declaratory, injunctive and monetary damages. It is not subject to sovereign immunity.  .

10.     Defendant Chief Russell Wells is the Jasper County Emergency Services Director for Jasper County and Fire Chief for JCFR and was a decision maker with final decision making authority in the decision to terminate Plaintiff, without due process, in retaliation for Plaintiff exercising his right to First Amendment protected speech.  Plaintiff sues Chief Wells in his official as well as in his individual capacities for actions taken under color of state law while acting in the scope of his official duties and for actions taken against Plaintiff with actual malice in that he acted with ill will towards Plaintiff and/or recklessly and wantonly with conscious indifference towards Plaintiff's rights.

11.     Upon information and belief, Defendant Chief Wells resides in or around Beaufort County, South Carolina.

12.     Defendant Andrew Fulghum is the County Administrator for Jasper County, with duties established by County Ordinance Article III, Section 2-67[2] and other law, including S.C. Code §

---

[2]Jasper County Ordinance Article III, Section 2-67 states in relevant part: "The county administrator shall bear the ultimate responsibility for the hiring and supervision of all county employees who do not work for elected or appointed officials. Employment, compensation, suspension of such employees under his direction shall be carried out in accordance with the county personnel policies and procedures most recently adopted by county council.

4-9-630[3] and 4-9-30,[4] and was a decision maker with final decision making authority in the decision to terminate Plaintiff, without due process, in retaliation for Plaintiff exercising his right to First Amendment protected speech.  Plaintiff sues Defendant Fulghum in his official as well as his individual capacities for actions taken under color of state law while acting in the scope of his official duties and for actions taken against Plaintiff with actual malice in that he acted with ill will towards Plaintiff and/or recklessly and wantonly with conscious indifference towards Plaintiff's rights.

13.     Upon information and belief, Defendant Fulghum resides in or around Jasper County, South Carolina.

14.     Defendants Jane Does and John Does, who Plaintiff may determine through discovery, were decision makers in the decision to terminate Plaintiff, without due process, in retaliation for Plaintiff exercising his right to First Amendment protected speech.  Plaintiff sues Defendants Jane Does and John Does in their official as well as their individual capacities for actions taken under color of state law while acting in the scope of their official duties and for actions taken against Plaintiff with actual malice in that they acted with ill will towards Plaintiff and/or recklessly and wantonly with conscious indifference towards Plaintiff's rights.

---

[3] S.C. Code § 4-9-630 states in relevant part:  "The powers and duties of the administrator shall include, but not be limited to, the following: (1) to serve as the chief administrative officer of the county government; (2) execute all policies and directives and legislative actions of the council; . . . (7) to be responsible for the administration of county personnel policies including salary and classification plans approved by council; (8) to be responsible for employment and discharge of personnel subject to provisions of subsection (7) of Section 4-9-30 and subject to the appropriation of funds by the council for that purpose . . .

[4] S.C. Code § 4-9-30 (7) states in relevant part: "to develop personnel system policies and procedures for county employees by which all county employees are regulated except those elected directly by the people, and to be responsible for the employment and discharge of county personnel in those county departments in which employment authority is vested in the county government. …."

15.     Upon information and belief, Defendants Jane Does and John Does live in or around Jasper County or Beaufort County, South Carolina.

16.     Defendants Chief Wells, Fulghum, and Jane and John Does are not entitled to qualified immunity because it is the well-established law that "[w]hile a public employee does not have constitutional right to his job," a public employer "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Edwards v. City of Goldsboro*, 178 F.3d 231, 245 (4th Cir. 1999) (quoting *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684 (1983)).

## JURISDICTION AND VENUE

17.     This action arises under the First Amendment and Fourteenth Amendment to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.  Jurisdiction for this suit is conferred in part by 42 U.S.C. § 1983, which provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction of thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

18.     This action also arises under Article I, Section 2 of the South Carolina Constitution protecting Freedom of Speech; Article I, Section 3 of the South Carolina Constitution guaranteeing the Right of Due Process relating to, among other protected liberty interests, those created pursuant to S.C. Code of Laws §16-17-560 protecting an employee from discharge because of political speech and opinions.

19.     Plaintiff seeks declaratory relief as well as temporary and permanent injunctive relief, including reinstatement to his employment position at JCFR and an injunction against enforcement

of the challenged provisions of the unconstitutionally vague and overbroad Jasper County Employee Handbook. Further, Plaintiff seeks a ruling that Defendants violated Plaintiff's right to free speech and engaged in a custom or practice of unconstitutionally retaliating against public employees for speaking on matters of public concern and unconstitutionally depriving him and other of due process. Plaintiff also seeks economic, compensatory, and punitive damages against Defendant Jasper County, Defendant JCFR, Defendant Chief Wells in his official and individual-capacities, Defendant Fulghum in his official and individual capacities, and Defendants Jane Does and John Does in their official and individual capacities for violating Plaintiffs United States Constitutional rights to freedom of speech and due process and South Carolina Constitutional and statutory rights to freedom of speech and due process.

20.     Accordingly, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1343(a)(3)(4). Further, this Court has pendent jurisdiction over state-counterpart claims pled pursuant to 28 U.S.C. §1367(a).

21.     This Court is authorized to grant Plaintiff's prayer for temporary and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

22.     This Court is authorized to grant Plaintiff's prayer for nominal, compensatory, and punitive damages pursuant to 42 U.S.C. §1983 and costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. §1988.

23.     Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b) because: (i) Defendants reside and/or are headquartered either in Beaufort or Jasper Counties in South Carolina, which are in the Beaufort Division of this judicial district, and (ii) all of the events, acts, and omissions giving rise to Plaintiff's claims occurred in Jasper County, South Carolina, which is located in the Beaufort Division of this judicial district.

## FACTUAL ALLEGATIONS

### Well Established Law – First Amendment - Speech

24.    It is the well-established law that the First Amendment to the Constitution of the United States, as applicable to the States by virtue of the Fourteenth Amendment to the Constitution of the United States, guarantees to public employees like Plaintiff, notwithstanding their employment by a government body, the right to comment as citizens on matters of public concern free from unnecessary and unreasonable interference, retaliation, and prior restraint from their employee and agents of their employee. *See Liverman v. City of Petersburg*, 844 F.3d 400, 406 (4th Cit. 2016) (quoting *Pickering v. Bd. Educ.*, 391 U.S. 563, 568 (1968) and *City of San Diego v. Roe*, 543 U.S. 77, 82 (2004)).

25.    It is the well-established law that "[w]hile a public employee does not have constitutional right to his job," a public employer "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Edwards v. City of Goldsboro*, 178 F.3d 231, 245 (4th Cir. 1999) (quoting *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684 (1983)).

26.    It has been well-established law in the Fourth Circuit since at least *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 319 (4th Cir. 2006) that:

> Under our precedent "a public employer is prohibited from [even] threatening to discharge a public employee in an effort to chill that employee's rights under the First Amendment." *Edwards v. City of Goldsboro*, 178 F.3d 231, 246 (4th Cir. 1999).

27.    It is also well established law that a prohibition based upon generalized and unsubstantiated interests against disruption rather than actual interference of the office is a violation of the First Amendment. *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 356 (4th Cir. 2000); *See also Liverman v. City of Petersburg*, 844 F.3d 400, 407 (4th Cit. 2016) (quoting *United States*

*v. Nat'l Treasury Employees Union (NTEU)*, 513 U.S. 454, 475 (1995) finding that the public employer must establish "'real, not merely conjectural' harms to its operations.").

28.     Additionally, the employee's interest in commenting on matters of public concern outweighs the government's interest in efficiency unless the employee-speaker is an agency-head or is in a policy making position. *See McVey v. Stacy*, 157 F.3d 271, 278-79 (4th Cir. 1998).

29.     The foregoing well-established law was sufficiently clear by February 6, 2025, the date of Plaintiff's termination, that a reasonable official would have understood it. The state of the law at the time gave all Defendants sufficient reason to know that their actions, complained of herein, were clearly wrong and unconstitutional.

**Jasper County Personnel Manual Is Clearly Unconstitutional**

30.     Defendants implemented and enforced against Plaintiff the unconstitutionally vague and overbroad Personnel Manual of Jasper County for all Jasper County employees including firefighters at JCFR like Plaintiff. The manual states, in part:

    1.      **INTRODUCTION**

To The Employees of Jasper County:

As an employee of Jasper County, you work for a very important group of people – the citizens of our County. Through your employment with Jasper County, you play a part in providing essential services to the public. These services are important to the existence and improvement of our County and the provision of these services is critical to the quality of life in Jasper County. For these reasons, it is important that you take your job seriously and perform your duties to the very best of your ability. Attitude is the most important part of your job. Your attitude toward the public should be one of courtesy, efficiency and willingness to serve. Your attitude toward co-workers and supervisors should be one of cooperation, responsibility and fairness.

You should also realize as a public employee that all of your actions both on and off the job reflect directly on Jasper County. Keep in mind that as a public employee paid with public funds and using public equipment, you are in the public eye. It is essential that your actions be beyond reproach and in the best interest of the County that you serve. It is the objective of the County Council

to maintain a staff of efficient and well-trained employees who are aware of their responsibilities and who are interested in serving the needs of the citizens of Jasper County.

The Personnel Manual of Jasper County is designed to acquaint you and to provide you with information about working conditions, employee benefits and some of the policies affecting your employment. You should read, understand and comply with all provisions of the Personnel Manual. It describes many of your responsibilities as an employee and outlines the programs developed by the County Council to benefit employees.

15.     **EMPLOYEE CONDUCT**

15.A    **INTRODUCTION**

As is the case with all organizations instances arise when an employee must be reprimanded, suspended, or discharged. When this happens the supervisor should submit a memorandum in which he/she outlines the circumstances involved and the action being requested. The supervisor reviews the report (with the exception of oral warnings and terminations) with the employee for his/her signature with the understanding that this only acknowledges that the employee has seen the report. The employee's signature does not necessarily indicate agreement with the contents of the report or the action to be taken, nor does it prevent appealing the action: **The employee must sign the report.** (Emphasis in original).

15.B    **TYPES OF DISCIPLINARY ACTION**

Disciplinary action that may be taken includes but is not limited to:
. . .

h.     Dismissal.

15.C    **EXAMPLES OF CONDUCT WARRANTING DISCIPLINARY ACTION**

It is not possible to list all acts and omissions that may result in disciplinary action. The disciplinary action that is administered for any particular act or acts of misconduct rests in the sole discretion of the County. The following list is merely a **guideline** of some of the more obvious types of misconduct that may result in disciplinary action. **The disciplinary action that is administered for any particular act or acts of misconduct rests in the sole discretion of the County without regard for the way it has treated other employees and without regard to the way it has handled similar situations.** (Emphasis in original).

. . .

u.     Any other reason that, in the County's sole discretion, warrants disciplinary action.

31.     Jasper County Personnel Policy No. 1 – Introduction, does not specify, or does not clearly specify, the limits of the discipline for violation of Policy No. 1 – Introduction, but it does include as a requirement of employment an instruction to "comply with all provisions of the Personnel Manual;" Policy No. 15.A – Employee Conduct describes instances when an "employee must be reprimanded, suspended, or discharged;" Policy No. 15.B lists types of disciplinary actions including dismissal; and Policy No. 15.C provides examples of conduct warranting disciplinary action including "Any other reason that, in the County's sole discretion, warrants disciplinary action."

32.     In light of Jasper County Personnel Policy No. 1's requirement that an employee's "actions be beyond reproach and in the best interest of the County that you serve" and Policy No. 15.C, u. including as an example of conduct warranting disciplinary action "Any reason that, in the County's sole discretion, warrants disciplinary action," Policy No. 15B constitutes a threat from Defendants and to dismiss or otherwise discipline public employees of Jasper County Fire-Rescue in an effort to chill the employee's rights under the First Amendment.

33.     Additionally, Jasper County Personnel Policy No. 1 – Introduction does not specify the meaning of the requirement that an employee's "actions be beyond reproach and in the best interest of the County that you serve."

34.     Further, in matters involving employee termination, Jasper County Personnel Policy No. 15.A does not require an employee being terminated to be provided, in writing, with the circumstances which led to the employee's termination.

35.     These policies, taken together, threatened the employment of Jasper County and JCFR public employees and firefighters, including Plaintiff, beyond the scope permitted under the First and Fourteenth Amendments of the United States Constitution and Article I, Section 2 of the South Carolina Constitution protecting Freedom of Speech; Article I, Section 3 of the South Carolina Constitution guaranteeing the Right of Due Process, and violations of S.C. Code of Laws §16-17-560 protecting an employee from discharge because of political speech and opinions.

36.     These policies, taken together, *continue* to threaten the employment of Jasper County and JCFR public employees and firefighters, including Plaintiff, beyond the scope permitted under the First and Fourteenth Amendments of the United States Constitution and Article I, Section 2 of the South Carolina Constitution protecting Freedom of Speech; Article I, Section 3 of the South Carolina Constitution guaranteeing the Right of Due Process, and violations of S.C. Code of Laws §16-17-560 protecting an employee from discharge because of political speech and opinions.

37.     As evident from the conduct of the Defendants toward Plaintiff, alleged below, Defendants assert the right to discipline public employees, like Plaintiff, for conduct found to be in violation of Policy No. 1 – Introduction and Policy No. 15.C u.

38.     As evident from the language in *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 319 (4ᵗʰ Cir. 2006), and other case law on point like *Liverman*, the contours of the Constitutional prohibition on dismissal or even threatening to dismiss a public employee in an effort to chill that employee's rights under the First Amendment are sufficiently clear that a reasonable official would have understood that publishing and enforcing Policy Nos. 1 and 15.C u. in conjunction with Policy Nos. 15A. and 15B. would violate the rights of the employees of Jasper County Fire-Rescue, including Plaintiff.  The law of *Ridpath v. Bd. of*

*Governors Marshall Univ.*, 447 F.3d 292, 319 (4ᵗʰ Cir. 2006) and related cases like *Liverman* applies with obvious clarity to specific conduct in question. The state of the law at the time of the implementation of this policy in or around July 2008 and its enforcement against Plaintiff on or around February 6, 2025 gave Defendants Jasper County, JCFR, Chief Wells, Fulghum, and Jane and John Does fair warning that their conduct was unconstitutional.

39.     Additionally, and/or alternatively, the prohibitions in the Jasper County Personnel Manual are expressed in a way that are too unclear for a person to reasonably know whether or not their conduct falls within the policy, and therefore to avoid the risk of legal consequences these public employees are either unaware of the limits of speech being imposed or stay far away from anything that could possibly fit the uncertain wording of the policy. The policy's effects are thereby far broader than intended and/or than the U.S. Constitution permits, and hence the policy on its face is overbroad.

40.     Jasper County Personnel Manual Policy Nos. 1 and 15.C. u. taken together, as well as their enforcement against Plaintiff, discussed below, governs **all speech at all times and at all places**, including all social network activity for twenty four hours per day, seven days per week. They govern all modes of expression without regard to the public employee's interest in communicating the same. They are overbroad and vague and unconstitutionally prohibit Plaintiff from discussing matters of public concern.

41.     Jasper County Personnel Manual Policy Nos. 1 and 15.C. u. in conjunction with Policy Nos. 15.A and 15.B implemented and enforced by Defendants, operated to chill and ultimately punish in the form of dismissal, Plaintiff's speech as a private citizen on important matters of public concern.

## First Amendment Expressions – Facebook Comments

42.     Social media websites and apps like Facebook allow users to connect with people all over the world.  Facebook and apps like it are important forums for political and social debates and a means for informing others on important matters of public concern.

43.     At all relevant times to this matter, Plaintiff's personal Facebook page and Facebook profile photo did not indicate that Plaintiff was employed by or connected in any way with Jasper County or JCFR.

44.     On February 2, 2025, Plaintiff, while off-duty and using his personal Facebook page, engaged in an online debate where he expressed opinions and speech which can be "fairly considered as relating to any matter of political, social, or other concern to the community," *Connick v. Myers,* 461 U.S. 138, 146 (1983), and are the "subject of legitimate news interest; that is, subject of general interest and of value and concern to the public."  *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004).  *See* (**Ex. 1**, 2025 02 02 Facebook online debate); (**Ex. 2**, News articles relating to Onlyfans); (**Ex. 3**, News articles relating to health care industry corruption and profiteering and Covid-19 masking mandates); (**Ex. 4**, News articles relating to Ukraine and its leadership); and (**Ex. 5**, News articles relating to U.S. President Trump's policies in support of Israel).

45.     During this February 2, 2025 online debate on matters of public concern, Plaintiff and others engaged in the typical quick exchange back and forth, in form and in language, associated with passionate online debate as "debate on public issues should be uninhibited . . . [and] may well include vehement, caustic . . . attacks . . . ."  *Rankin v. McPherson*, 483 U.S. 378, 387 (1987) (quoting N.Y. Times Co. v. Sullivan, 376 U.S. 254, 270 (1964)).

46.     As an informed private citizen, Plaintiff holds informed understandings and beliefs and during this online debate engaged in protected speech to give his opinion and inform a Facebook community regarding important matters of public concern relating to the obvious societal damage and harm relating to online pornography including streaming sites like "Onlyfans" which Plaintiff reasonably understands to be a subscription-based online streaming platform that allows users to pay for content from creators and such content routinely involves adult content such as nude and pornographic photos, videos, and live streams and preys on the most vulnerable individuals in our society and the very obvious dangers including, but not limited to, human trafficking of children and other vulnerable groups.[5] [6] *See* (**Ex. 2**, News articles relating to Onlyfans).

---

[5] https://www.bbc.com/news/uk-57255983: *The Children Selling Explicit Videos on OnlyFans* May 26, 2021:

> Under-18s have used fake identification to set up accounts, and police say a 14-year-old used a grandmother's passport. The UK's most senior police officer for child protection also says children are being "exploited" on the platform . . . The platform has more than a million "creators" who share video clips, photos and messages directly with subscribers for a monthly fee.  In return for hosting the material, OnlyFans takes a 20% share of all payments. . . . OnlyFans was a big winner during the pandemic, exploding in popularity as much of the world was housebound. The social media platform has grown nearly 10-fold since 2019, and now has more than 120 million users. Some creators have become millionaires from their accounts, yet for most it has been a lifeline or a second income during the pandemic. . . .  Men's lifestyle magazine GQ says "innovations like OnlyFans have undoubtedly changed Internet culture and, by extension, social behavior forever". Andy Burrows, the NSPCC's head of policy for child safety online, sees its impact differently. He says the site blurs the lines between influencer culture and sexualized behaviour on social media for young people, and presents a "toxic cocktail of risks".

[6] https://www.bbc.com/news/world-66615008: *OnlyFans: Who is Leonid Radvinsky, the Elusive Owner of a Porn Empire?*, August 26 2023

> OnlyFans' profits have skyrocketed in the past year and news that its owner earned more than $300m (£238m) in dividends has ignited fresh questions about the pornography mogul. Leonid Radvinsky is a 41-year-old Ukrainian-American entrepreneur with an estimated net worth of $2.1bn.

47.     Additionally, as an informed private citizen, Plaintiff holds informed understandings and beliefs and during this online debate engaged in protected speech to give his opinion and  inform a Facebook community regarding important matters of public concern relating to public policy and controversies regarding concerns relating to corruption in the healthcare industry, public policy and controversies relating to corruption in the healthcare industry, Covid-19 related masking and vaccine mandates, economic and other damages caused by the "shuttering" of unfavored businesses and industries during "lockdowns," and the alleged profiteering of healthcare providers generally and specifically relating to Covid-19 masking and vaccine mandates.  *See* (**Ex. 3**, News articles relating to healthcare industry corruption and Covid-19 masking mandates).

48.     Further, as an informed private citizen, Plaintiff holds informed understandings and beliefs and during this online debate engaged in protected speech to give his opinion and inform a Facebook community regarding important matters of public concern relating to: (1) U.S. support of Ukraine and its military in the war in Ukraine with Russia; (2) U.S. support of Ukraine in light of what Plaintiff reasonably believes to be Ukraine's historical and current ties to Nazi-aligned factions; and (3) U.S. support and alliance with Ukrainian President Volodymyr Zelenskyy including expressions about what Plaintiff reasonably believes to be President Zelenskyy's links to corruption and lack of proper leadership credentials and experience as a former actor.  *See* (**Ex. 4**, News articles relating to Ukraine and its leadership).

49.     Furthermore, as an informed private citizen, Plaintiff holds informed understandings and beliefs and during this online debate engaged in protected speech to give his opinion and inform a Facebook community regarding important matters of public concern relating to U.S. foreign policy relating to U.S. relations with Israel, including the positive aspects of U.S. recognition

of Jerusalem as the capital of Israel. *See* (**Ex. 5**, News articles relating to U.S. President Trump's policies in support of Israel).

50.    Accordingly, on or about February 2, 2025, while off-duty and at home on his personal device, Plaintiff participated in an online debate using his personal Facebook account - which did not identify him as being employed or associated with Jasper County or JCFR -responding to an anonymous Reddit[7] story appearing on Facebook that sought advice from the public on a topic that Plaintiff reasonably believed involved a request to the public for thoughts and opinions regarding streaming nude and pornographic content through the online streaming website or app "OnlyFans" or a similar online streaming website or app in exchange for monetary compensation totaling $14,000 per month.  (**Ex. 1,** at pp. 1-2).

51.    The purpose of Plaintiff's initial response was to inform and express his concerns to the Facebook community regarding the "OnlyFans" streaming platform, in particular, what he believed to be the very obvious societal harm relating to OnlyFans creators producing and monetizing adult content such as nude and pornographic photos, videos, and live streams as well as the obvious dangers to vulnerable members of society including, but not limited to, human trafficking of children and other vulnerable groups.  Plaintiff's initial comment in response to the topic was as follows:

> Only fans pays well selling your body, but you seem to be lacking in brains.

*Id.* at p. 2.

---

[7] Google/AI states:

> Reddit is a social media platform where users, called "Redditors", submit content like links, text posts, images, and videos which are then voted up or down by other users, with the most upvoted content appearing on the front page; essentially, it's a collection of online forums organized by topic called "subreddits" where people can discuss and share information on a wide range of subjects, often referred to as "the front page of the internet" due to its curated content based on user votes.

52. Plaintiff's comment was followed by a barrage of attacks against him by other Facebook users participating in the conversation, including the following comment by a Facebook user self-identified as Andrea Ipirq:

> says the ugly, stupid, disgusting, fat f*ck nobody will touch sh*t on a stick, your h*e of a mother should have s*allowed you.

*Id.* at p. 3. (Edits added).

53. Another comment by Facebook user Tania Dubodiel who self-identified as a Ukrainian national, health care worker, and medical student whose publicly available information shows that she resides in Spain, continued the discussion regarding the OnlyFans streaming platform:

> Facebook user Dubodiel posted;  Are you dumb?  Streaming is not only fans.

> Plaintiff posted:  Are you an imbecile?  $14k a month?...it's only fans which is a streaming platform.

> Facebook user Dubodiel posted: Mid tier Twitch streamers earn that.  Only Fans is not a streaming platform, *tard.

*Id.* at pp. 3-4. (Edits added).

54. In response to Facebook user Dubodiel's post, on February 2, 2025, while still off-duty and at home on his personal device, Plaintiff wrote as a private citizen for the purpose of informing and expressing his concerns to a Facebook community regarding other matters of public concern relating to (1) public policy and controversies relating to corruption in the healthcare industry, Covid-19 related masking and vaccine mandates, economic and other damages caused by the "shuttering" of unfavored businesses and industries during "lockdowns," and the alleged profiteering of healthcare providers generally and specifically relating to Covid-19 masking and vaccine mandates; (2) public policies and controversies relating to U.S. support and military aid to Ukraine in light of its alleged historical and present associations with Nazi-

aligned factions as well as criticisms of Ukrainian leadership including expressions about what Plaintiff reasonably believes to be President Zelenskyy's links to corruption and lack of proper leadership credentials and experience as a former actor; and (3) U.S. foreign policy relating to U.S. relations with Israel, including positive aspects of U.S. recognition of Jerusalem as the capital of Israel:

> Plaintiff posted:  OK A*shat your mask explains EVERYTHING…and the Ukrainazi flag.
>
> Fb user T. Dubodiel posted:  The mask explains that I'm a Healthcare worker and a med student, and the flag is because I'm Ukrainian.  The only nazi nonce [pedophile][8] here is you.
>
> Plaintiff posted:  You mean healthcare w*ore.[9]  Fixed it for you.  F*ck Ukraine well known established nazi nation presently and historically.
>
> Fb user T. Dubodiel posted:  So you're a f*cking idiot.  You're the one with a nazi president and drowning in the far right, while Ukraine was always the safest country for Jewish people in the whole Eastern Europe.  Keep spewing propaganda, trash.
>
> Plaintiff posted:  The same president who recognized Jerusalem as the official capital of Israel?  I cannot wait for your unelected dictator gay actor to be arrested by Russian forces.  In the meantime get some help for your obvious mental disabilities.  That mask obviously limited 02 to your brain.

*Id.* at pp. 4-5. (Edits added).

55.    On or around February 2, 2025, Facebook user Dubodiel, a Ukrainian national residing in Spain, privately messaged JCFR's private Facebook inbox despite Plaintiff's personal Facebook page and profile photo not containing any indication that he was employed or associated with Jasper County or JCFR.

---

[8] Dictionary.cambridge.org defines "nonce" as: "a person who commits a crime involving sex, especially sex with a child."
[9] *See* ¶65 below.

56.    In her private message to JCFR's private Facebook inbox, Dubodiel stated as follows and included screenshots of the online debate:

> Facebook user Dubodiel private message:  Your senior firefighter Stephen Baske is a xenophobe and racist, and frankly, it's concerning the sh*t he is spewing.  My father was a firefighter, plus I'm half Jewish, and this was horrid.

> JCFR private reply:  Good Morning I will look into this immediately.

> Facebook user Dubodiel private message:  Thank you, I appreciate it.  My greatgrandpa wasn't buried alive by nazis for being Jewish for me to be called a nazi.

(**Ex. 6**, Facebook user Dubodiel private message to JCFR Facebook inbox with the portions of the online debate she submitted).

57.    Upon information and belief, Facebook user Dubodiel is the only individual that submitted Plaintiff's Facebook posts to JCFR and Defendants received no other complaints from either the public or any of Plaintiff's co-workers.

58.    The sole issue raised by Dubodiel in her private message to JCFR was that Plaintiff is allegedly "xenophobic and racist" specifically relating to Plaintiff's speech relating to his reasonable understanding and belief regarding Ukraine's alleged historical and current ties to Nazi-aligned factions.[10]  *See* (**Ex. 4**, news articles regarding Ukraine's historical and current ties to Nazi-aligned factions).

59.    Facebook user Dubodiel, and ultimately Defendants, misinterpreted Plaintiff's speech as being "xenophobic and racist."

60.    None of Plaintiff's statements were, on their face, or intended to be, "xenophobic and racist."

---

[10] *See*, e.g, https://en.wikipedia.org/wiki/Ukrainian_collaboration_with_Nazi_Germany, *Ukrainian Collaboration with Nazi Germany*; https://en.wikipedia.org/wiki/Janowska_concentration_camp, *Janowska concentration camp.*

61.    Facebook user Dubodiel escalated the debate by using a slur for the mentally handicapped against Plaintiff and a word describing him as a pedophile.

62.    Each comment made by Plaintiff in his February 2, 2025 online debate involved his expressions as a private citizen for the purpose of informing the Facebook community and expressing his concerns relating to important matters of public concern in that they could be "fairly considered as relating to any matter of political, social, or other concern to the community," *Connick v. Myers,* 461 U.S. 138, 146 (1983), and are the "subject of legitimate news interest; that is, subject of general interest and of value and concern to the public." *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004). *See* **Exs. 2-5.**

63.    None of Plaintiff's statements fall under any of the excepted speech categories not protected by the First Amendment:  (1) incitement to lawless action – *see Brandenburg v. Ohio*, 395 U.S. 444 (1969); (2) true threats of violence – *Watts v. U.S.*, 394 U.S. 705, 706 (1969); *Virginia v. Black*, 538 U.S. 343, 359-360 (2003); and *Counterman v. Colorado*, 143 S.Ct. 2106, 2110 (2023); (3) fighting words – *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942); (4) obscenity – *Miller v. California*, 413 U.S. 15 (1973); (5) defamation – *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); ; (6) fraud and perjury – *Bronson v. United States*, 409 U.S. 352 (1973); or (7) speech integral to criminal conduct – *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949).

64.    The purpose of Plaintiff's use of all of his constitutionally protected speech in his Facebook comments during this debate, including profanity, hyperbole, and euphemisms, was to express his passion and the importance of his concerns and beliefs relating to these important matters of public concern and all of his expressions were well within the parameters of typical online debate on such important matters of public concern especially in light of the speech used by the other participants in this particular debate.

65.     Specifically, Plaintiff's use of the phrase "healthcare w*ore" was intended to be a hyperbolic euphemism and political speech with the purpose of conveying Plaintiff's political opinion and concern relating to Covid-19 masking and vaccine mandates and the related healthcare industry profiteering during the Covid-19 pandemic and that is how it was intended and understood by the participants in this debate.  The term "w*ore" as used in this context - is commonly used hyperbole and understood by the public in this manner, e.g.: "a mercenary or unscrupulous person; a person who is willing to compromise their integrity or principles for personal gain or in pursuit of something" - https://www.merriam-webster.com/dictionary/whore ; and "Science is the w*ore of industry and the handmaiden of war." – Edward Abbey, American author and essayist.

66.     Plaintiff did not hold a highly visible, policymaking position with JCFR.

67.     None of Plaintiff's February 2, 2025 Facebook comments during the online debate actually caused or could have caused any impairment to discipline by his JCFR superiors or harmony among his JCFR co-workers or sufficient impairment to outweigh Plaintiff's and the public's interest in expressing this First Amendment protected speech.

68.     None of Plaintiff's February 2, 2025 Facebook comments during the online debate actually caused  or could have caused any detrimental impact on close working relationships involving JCFR or sufficient impairment to outweigh Plaintiff's and the public's interest in expressing this First Amendment protected speech.

69.     None of Plaintiff's February 2, 2025 Facebook comments during his online debate actually caused or could have caused any interference with the regular operation of the JCFR enterprise or sufficient impairment to outweigh Plaintiff's and the public's interest in expressing this First Amendment protected speech.

70.     None of Plaintiff's February 2, 2025 Facebook comments during his online debate actually caused or could have caused any interference with the performance of Plaintiff's employment duties as a JCFR firefighter and EMT or sufficient interference to outweigh Plaintiff's and the public's interest in expressing this First Amendment protected speech.

71.     None of Plaintiff's February 2, 2025 Facebook comments during his online debate actually resulted in or could have resulted in any other real harm to the efficiency of JCFR's operations or sufficient harm to outweigh Plaintiff's and the public's interest in expressing this First Amendment protected speech.

72.     Plaintiff's interest and the public's interest in him speaking on these matters of public concern outweighs the government's interest in providing effective and efficient services to the public.

### Discipline for Plaintiff's Facebook Comments and First Amendment Speech Retaliation

73.     On February 3, 2025, JCFR's initial communication to Plaintiff regarding Facebook user Dubodiel's submission was simply to request that he block her from his Facebook account but at no point was he asked or instructed to delete any of the comments.

74,     Later on February 3, 2025, without conducting an investigation, without providing Plaintiff a written report or letter, and without hearing from Plaintiff - Defendants made the decision to suspend Plaintiff in retaliation for his constitutionally protected expressions as a private citizen on matters of public concern.

75.     On February 6, 2025, without conducting an investigation, without providing Plaintiff a written report or letter, and without hearing from Plaintiff - Defendant Chief Wells met with Plaintiff for the sole purpose of informing him of the decision to terminate Plaintiff in retaliation for his constitutionally protected expressions as a private citizen on matters of public concern.

76. Days after he was informed that he was terminated on February 6, 2025, Plaintiff received a letter in the mail dated February 6, 2025, and signed by Jasper County Human Resources Director, Nicole Holt, stating, in part:

> Jasper County has received Chief Wells' recommendation for termination, and the purpose of this letter is to inform you of your termination effective as of today's date, February 6, 2025. Your termination is based on the following infractions that were in violation of the Jasper County Policies and Procedures:
>
> • Section 1 and Section 15.C.u[11]

(**Ex. 7**, 2025 02 06 Termination Ltr. with portions of Jasper County Personnel Manual).

77. This letter made no further mention of the basis upon which Plaintiff was terminated and contained no statement or discussion of the facts or circumstances relating to Plaintiff's alleged violation of Jasper County's policies and procedures.

78. Pursuant to the February 6, 2025 Jasper County Human Resources Disciplinary/Counseling Report, which was not provided to Plaintiff prior to or at the time of his termination and only obtained by him weeks later, the entirety of the stated factual basis for Plaintiff's termination was that JCFR received a private Facebook chat message from Facebook user Dubodiel in which she submitted screen shots of the online debate and called Plaintiff a "xenophobe and racist." (**Ex. 8**, 2025 02 06 Disciplinary/Counseling Report).

79. This discipline was intended to be consistent with and in furtherance of the policy and practice of Defendants as reflected in the unconstitutionally vague and overbroad Section 1 and Section 15.C.u of the Jasper County Personnel Manual implemented and enforced by Defendants which chills the free speech of Jasper County and JCFR employees like Plaintiff.

80. The foregoing allegations, taken as true, and the inferences that can be drawn therefrom, support the conclusion that Defendants have taken adverse employment actions against Plaintiff

---

[11] *See* Section 1 and 15.C.u above at ¶30 above.

substantially motivated by the desire to retaliate against Plaintiff for the constitutionally protected comments and opinions he expressed as a private citizen with his personal Facebook account while off-duty relating to matters of public concern.

### Failure to Apply, or Appropriately Apply, Pickering Balancing Test

81.   All of Plaintiff's Facebook comments made during the February 2, 2025 online debate clearly related to matters of public concern.

82.   The numerous passionate and provocative comments responding to Plaintiff's posts demonstrate that the public was or was likely to be concerned about these same issues. Nothing in Plaintiff's Facebook comments could be construed as raising a personal grievance with JCFR.  The topics discussed by Plaintiff are matters of public concern.

83.   There is no reason to believe that these isolated, off-duty comments by Plaintiff on his personal Facebook account relating to matters of public concern with individuals all over the world actually impaired or could have impaired the maintenance of discipline by supervisors, damaged close personal relationships crucial to firefighting operations, impeded the performance of the public employee's duties, interfered with the operation of the institution, conflicted with the responsibilities of the employee with the institution, or abused the authority and public accountability that the employee's role entailed.

84.   Upon information and belief, there was no actual attempt to apply the *Pickering* balancing test. *Pickering v. Bd. Educ.*, 391 U.S. 563, 568 (1968).  It is evident, or at least probable and reasonably inferred, that the Defendants did not attempt to or perform a *Pickering* balancing test or consider this matter as being possibly protected under the First Amendment.  This negates any claim to qualified immunity.

### Damages

85.     As a proximate result of the unconstitutional actions of Defendants, Plaintiff has suffered damages including but not limited to the infringement of his constitutional liberties including loss of freedom of speech and damage to personal and professional reputation making it highly unlikely or impossible to obtain other employment all without due process, as well as loss of salary, loss of health insurance, loss of retirement benefits, humiliation, emotional pain, mental anguish, and suffering, out of pocket expenses, and attorney's fees and costs, and other economic and non-economic damages.

86.     Additionally, temporary and permanent injunctive relief is appropriate to reinstate Plaintiff into his position at JCFR as well as to restrain enforcement of Defendants' unconstitutionally overbroad and unconstitutionally vague disciplinary policies and procedures as written, implemented, and enforced.

## Color of Law

87.     The conduct complained of herein was done intentionally under color of statute, ordinance, regulation, or custom, with full knowledge and awareness of the rights being violated or with reckless or callous indifference to the federally protected rights of others.

88.     Defendants, with final authority on such matters, under color of state law, ratified, condoned, and/or directed all of the retaliatory adverse employment actions taken against Plaintiff and implemented and enforced the unconstitutionally overbroad and unconstitutionally vague Section 1 and Section 15.C.u of the Personnel Manual of Jasper County.

## COUNT I
**Violation of Plaintiff's First Amendment Freedom of Speech, Made Applicable to the States by the Fourteenth Amendment and Article I, Section 2 of the South Carolina Constitution**
**Actionable Pursuant to 42 U.S.C. § 1983**
**Retaliation for Facebook Posts**

**(Against All Defendants including Defendant Chief Wells in his official capacity as Jasper**

**County Fire Chief and Emergency Services Director and in his individual capacity, and Defendant Fulghum in his official capacity as Jasper County Administrator and in his individual capacity and Jane and John and Does all in their official capacities and in their individual capacities)**

89.     The allegations made elsewhere in this complaint are hereby incorporated as if repeated herein verbatim.

90.     Defendants unlawfully retaliated against Plaintiff under the First Amendment, since (1) Plaintiff spoke as a private citizen on a matters of public concern, (2) Plaintiff's interest in speaking on these matters outweighed the government's interest in providing effective and efficient services to the public, and (3) Plaintiff has been "adversely affected" by the retaliation in that he was terminated from his employment with JCFR due to the retaliation against his speech and in a manner that "tended to chill his . . . First Amendment rights" and Plaintiff's speech was a "substantial factor in the decision to take the adverse retaliatory action."

91.     Defendants Jasper County and JCFR are liable for the actions of Defendants Chief Wells, Fulghum, and Does because the deprivations were the result of actions pursuant to official municipal policy, the actions of its policymaking official Defendants Chief Wells, Fulghum, and Does.

92.     There was in fact no actual disruption in the effective and efficient services to the public provided by JCFR as a result of Plaintiff's speech.

93.     Likewise, there was no reasonable likelihood of disruption in effective and efficient services to the public provided by JCFR as a result of Plaintiff's speech.

94.     Plaintiff's interest in speaking on these matters outweighed the government's interest in providing effective and efficient services to the public

95.     Plaintiff was actually retaliated against due to his protected speech because he was terminated from his employment based on his protected speech.

96.     Additionally, Plaintiff's speech was actually restrained and Plaintiff's Facebook posts and

comments were restricted and chilled and continue to be restricted and chilled as a result of the

retaliation.

97.     A substantial factor in the decision to take the adverse employment action against Plaintiff

by terminating him was in retaliation for his legitimate exercise of his First Amendment Right to

Free Speech that he exercised in publishing the aforesaid comments and posts on Facebook on

February 2, 2025.  In support of this allegation, Plaintiff relies on the factual allegations stated in

his complaint and the reasonable inferences therefrom, including but not limited to:

    a.    The fact that Plaintiff's February 2, 2025 Facebook posts and comments containing his protected speech as a private citizen on matters of public concern were the basis of Plaintiff's termination;

    b.    The fact that Plaintiff's Personal Facebook account does not identify him as an employee of either Jasper County or JCFR or reference Jasper County, JCFR, or any employee, agent, or policy of Jasper County or JCFR;

    c.    The fact that Plaintiff was off-duty when making these Facebook posts and comments from his personal Facebook account which does not reference Jasper County, JCFR, or any employee, agent, or policy of Jasper County or JCFR;

    d.    The fact that Plaintiff did not represent himself as speaking on behalf of Jasper County, JCFR, or any employee, agent, or policy of Jasper County or JCFR

    e.    The fact that Plaintiff was not commenting on any personal grievance or as part of his official duties relating to his employment with JCFR;

    f.    The fact that Plaintiff was commenting on  (1) the societal dangers and harm of online pornographic streaming sites and apps like "Onlyfans;" (2) public policy and controversies relating to corruption in the healthcare industry, Covid-19 related masking and vaccine mandates, economic and other damages caused by the "shuttering" of unfavored businesses and industries during "lockdowns," and the alleged profiteering of healthcare providers generally and specifically relating to Covid-19 masking and vaccine mandates; (3) public policies and controversies relating to U.S. support and military aid to Ukraine in light of its alleged historical and present associations with Nazi-aligned factions including criticisms of current Ukrainian leadership; and (4) U.S. President Trump's U.S. foreign policy relating to relations with Israel,

including positive aspects of U.S. recognition of Jerusalem as the capital of Israel which are all matters of public concern; and

g.    The fact that Plaintiff was indeed terminated because of his protected speech as a private citizen relating to matters of public concern.

98.    Thus, there is a causal relationship between Plaintiff's protected speech and expressions and all of the disciplinary actions taken by Defendants against Plaintiff, including, but not limited to, Plaintiff's suspension and subsequent termination of employment which were taken in response to and in retaliation of Plaintiff's exercise of his First Amendment freedoms secured by the Free Speech Clause of the First Amendment to United States Constitution: "Congress shall make no law . . . abridging the freedom of speech."

99.    The portions of Section 1 and Section 15.C.u of the Personnel Manual of Jasper County cited to Plaintiff in his termination letter as the basis of his termination are unconstitutionally overbroad and vague as written and as applied and prohibit constitutionally protected speech including Plaintiff's aforesaid February 2, 2025 Facebook comments and posts.

100.    The portions of Section 1 and Section 15.C.u of the Personnel Manual of Jasper County cited to Plaintiff in his termination letter as the basis of his termination are unconstitutionally vague as written and as applied and do not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that person can act accordingly.

101.    All of the actions taken by Defendants and referred to herein, including the suspension and termination of Plaintiff's employment with JCFR were done by Defendants while acting under color of state law in their official capacities as well as in their individual capacities and had the effect of depriving Plaintiff of rights secured by the Constitution and laws of the United States, specifically the Free Speech Clause of the First Amendment to the United States Constitution as well as Article I, Section 2 of South Carolina's Constitution all in violation of 42 U.S.C. § 1983.

102.    The foregoing allegations, taken as true, and the inferences that can be drawn therefrom, support the conclusion that Defendants have taken adverse employment action against Plaintiff that was substantially motivated by the desire to retaliate against Plaintiff for the political viewpoint expressed in his comments and opinions.

103.    Defendants acted with malicious intent to unlawfully injure him, or with a callous or reckless disregard of the Plaintiff's First Amendment rights.

104.    As a direct and proximate result of Defendants' retaliation and punishment against Plaintiff for exercising his First Amendment rights: Plaintiff has been, and continues to be, deprived of his First Amendment rights which is an irreparable harm; Plaintiff has been and continues to be deprived of his good personal and professional relationship making it unlikely or impossible to gain other employment which is an irreparable harm; Plaintiff has been and continues to be deprived of his employment resulting in lost wages, lost future wages, and lost health insurance and other benefits without his employment at JCFR he is unable to afford, and loss of his EMT certification which is necessary for Plaintiff to find other employment as a firefighter which are all irreparable harms; and Plaintiff has suffered other injuries including, but not limited to, mental and emotional anguish and distress, extreme humiliation and embarrassment, and other economic and non-economic damages including attorneys fees and costs.

105.    Because the law is clearly established in this area, and because Defendants had (and have) fair warning that suspending Plaintiff without pay and then terminating Plaintiff in response to him exercising his First Amendment freedoms by expressing his view, opinions, and beliefs as an informed, private citizen on matters of public concern is unconstitutional, Defendants are liable in their official and individual capacities for declaratory, temporary and permanent injunctive relief, and monetary damages including attorney's fees and costs.

106. Defendants Chief Wells, Fulghum, and Does are also personally liable in their individual capacities for violating Plaintiff's First Amendment rights for declaratory, temporary and permanent injunctive relief, and monetary damages including attorneys fees and costs.

107. Accordingly, Plaintiff is entitled to nominal, compensatory, and punitive damages, as well as temporary and permanent injunctive relief, declaratory relief, and attorney's fees and costs for the violation of his First Amendment rights by the retaliation for his February 2, 2025 Facebook protected speech as a private citizen speaking on matters of public concern.

**COUNT II**
**Violation of Plaintiff's First Amendment Freedom of Speech,**
**Made Applicable to the States by the Fourteenth Amendment and Article I, Section 2 of the**
**South Carolina Constitution**
**Actionable Pursuant to 42 U.S.C. § 1983**
**Creation, Implementation, and Enforcement of Jasper County Personnel Manual**
**Section 1 and Section 15.C.u**
**As Written and As Enforced**

**(Against All Defendants including Defendant Chief Wells in his official capacity as Jasper**
**County Fire Chief and Emergency Services Director and in his individual capacity, and**
**Defendant Fulghum in his official capacity as Jasper County Administrator and in his**
**individual capacity and Jane and John and Does all in their official capacities and in their**
**individual capacities)**

108. The allegations made elsewhere in this complaint are hereby incorporated as if repeated here verbatim.

109. Defendants established, implemented, and enforced a policy, namely Jasper County Personnel Manual Section 1 and Section 15.C.u, threatening the employment of Jasper County employees, including Plaintiff, beyond the scope permitted under the First Amendment.

110. The law of *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 319 (4th Cir. 2006), *Connick v. Myers*, 461 U.S. 138, 154 (1983), and *Liverman v. City of Petersburg*, 844 F.3d 400, 406 (4th Cir. 2016), and related cases applies with obvious clarity to the specific conduct in question. The state of the law at the time of the establishment, implementation, and enforcement

of this policy in February 2025 gave Defendants fair warning that this conduct was unconstitutional.

111.    Jasper County Personnel Manual Section 1 and Section 15.C.u implemented and enforced by Defendants operated to punish as well as chill the speech of Plaintiff on matters of public concern including Plaintiff's aforesaid February 2, 2025 Facebook comments and posts.

112.    Jasper County Personnel Manual Section 1 and Section 15.C.u implemented and enforced by Defendants are unconstitutionally overbroad as written and as applied and prohibit constitutionally protected speech including Plaintiff's aforesaid February 2, 2025 Facebook comments and posts.

113.    Jasper County Personnel Manual Section 1 and Section 15.C.u implemented and enforced by Defendants are unconstitutionally vague as written and as applied and do not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that person can act accordingly.

114.    All of the actions taken by Defendants and referred to herein, including the implementation and enforcement of Jasper County Personnel Manual Section 1 and Section 15.C.u as written and as applied, were done by Defendants while acting under color of law in their official capacities as well as by Defendants Chief Wells, Fulghum, and Does in their individual capacities and had the effect of depriving Plaintiff of rights secured by the Constitution and laws of the United States, specifically the Free Speech Clause of the First Amendment to the United States Constitution as well as Article I, Section 2 of South Carolina's Constitution all in violation of 42 U.S.C. § 1983.

115.    Defendants acted with malicious intent to unlawfully injure him, or with a callous or reckless disregard of the Plaintiff's First Amendment rights.

116.    As a direct and proximate result of Defendants' implementation and enforcement of Jasper County Personnel Manual Section 1 and Section 15.C.u as written and as applied: Plaintiff has been, and continues to be, deprived of his First Amendment rights which is an irreparable harm; Plaintiff has been and continues to be deprived of his good personal and professional relationship making it unlikely or impossible to gain other employment which is an irreparable harm; Plaintiff has been and continues to be deprived of his employment resulting in lost wages, lost future wages, and lost health insurance and other benefits and loss of his EMT certification which is necessary for Plaintiff to find other employment as a firefighter which are all irreparable harms; and Plaintiff has suffered other injuries including, but not limited to, mental and emotional anguish and distress, extreme humiliation and embarrassment, and other economic and non-economic damages including attorney's fees and costs.

117.    Because the law is clearly established in this area, and because Defendants had (and have) fair warning that Defendants' implementation and enforcement of the Jasper County Personnel Manual Section 1 and Section 15.C.u as written and as applied is unconstitutional, Defendants are liable in their official as well as individual capacities for declaratory, temporary and permanent injunctive relief, and monetary damages including attorney's fees and costs.

118.    Defendants Chief Wells, Fulghum, and Does are also personally liable in their individual capacities for violating Plaintiff's First Amendment rights for declaratory, temporary and permanent injunctive relief, and monetary damages including attorneys fees and costs.

119.    Accordingly, Plaintiff is entitled to nominal, compensatory, and punitive damages, as well as temporary and permanent injunctive relief, declaratory relief, and attorney's fees and costs for this violation of his Constitutional rights by Defendants' implementation and enforcement of this unconstitutional policy.

## COUNT III
### Violation of Plaintiff's Fourteenth Amendment Due Process Rights
### Actionable Pursuant to 42 U.S.C. § 1983
### Failure to Provide Due Process

**(Against All Defendants including Defendant Chief Wells in his official capacity as Jasper County Fire Chief and Emergency Services Director and in his individual capacity, and Defendant Fulghum in his official capacity as Jasper County Administrator and in his individual capacity and Jane and John and Does all in their official capacities and in their individual capacities)**

120.    The allegations made elsewhere in this complaint are hereby incorporated as if repeated here verbatim.

121.    The Due Process Clause of the Fourteenth Amendment of the United States Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law.

122.    Plaintiff's liberty interests are implicated where his "'good name, reputation, honor, or integrity is at stake because of what the government is doing to him.'" *Board of Regents v. Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707 (quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)); *see Murphy -Taylor v. Hofmann*, 968 F.Supp.2d 693, 731 (D.MD 2013) (quoting *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012) ("when 'reputational injury [is] accompanied by a state action that "distinctly altered or extinguished" [the plaintiff's] legal status,' such as termination of public employment, a due process claim arises;" *see also Winegar v. Des Moines Indep. Community School Dist.,* 20 F.3d 895, 899 (8th Cir.1994) ("An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges.").

123.    Plaintiff's liberty interests are implicated where Defendants' false and wrongful charge against him of being "xenophobic and racist" and/or making "xenophobic and racist" statements have made it unlikely or impossible for him to gain other employment.

124.    Plaintiff's liberty interests are also implicated where Defendants deprived him of his constitutionally protected liberty interest in speech as a private citizen on matters of public concern and political speech.

125.    Plaintiff's liberty interests are also implicated where Defendants deprived him of his protected liberty interest in expressing political opinions at his place of employment which is guaranteed by the First Amendment of the U.S. Constitution, Article I, Section 2 of the South Carolina Constitution, and statutorily created by S.C. Code of Laws § 16-17-560.

126.    Without investigation or hearing from Plaintiff, Plaintiff was wrongfully charged with violating Jasper County's Personnel Manual, Section 1 and Section 15.C.u.  Plaintiff was also wrongfully charged with being "xenophobic and racist" and/or making "xenophobic and racist" statements. Such charges implicate Plaintiff's liberty interests in his good name and reputation because the charges of  xenophobia and racism and the subsequent sanctions imposed by Defendants "might     seriously     damage     his     standing     and     associations     in     his community." *Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707.

127.    All of the charges made against Plaintiff are false.

128.    As a result of these wrongful charges made against Plaintiff without investigation or hearing from Plaintiff, he was suspended and then terminated by Defendants without an investigation, written report or letter, or being heard from and as a result Plaintiff has been, and continues to be, deprived of his First Amendment rights which is an irreparable harm; Plaintiff has been and continues to be deprived of his good personal and professional relationship making it unlikely or impossible to gain other employment which is an irreparable harm; Plaintiff has been and continues to be deprived of his employment resulting in lost wages, lost future wages, and lost health insurance and other benefits and loss of his EMT certification which is necessary for

Plaintiff to find other employment as a firefighter which are all irreparable harms; and Plaintiff has suffered other injuries including, but not limited to, mental and emotional anguish and distress, extreme humiliation and embarrassment, and other economic and non-economic damages including attorneys fees and costs.

129.     Due process requires at a minimum that before being deprived of his protected liberty interests in (1) his good name, reputation, and honor making it unlikely or impossible to gain other employment; (2) his First Amendment right to speak as a private citizen on matters of public concern without being discharged from public employment; and (3) his freedom of speech rights guaranteed by Article I, Section 2 of the South Carolina Constitution and S.C. Code of Laws § 16-17-560, Plaintiff was entitled to fair notice as to what conduct is proscribed, fair notice as to the substance of the charges alleging violations of the prohibition on such proscribed conduct, a fair opportunity to defend against specific charges of such violations, and a process and punishments that are not arbitrary and capricious.  Defendants violated these fundamental due process rights of Plaintiff.

130.     Due process requires that "a deprivation of life, liberty, or property `be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill, supra,* 470 U.S. at 542, 105 S.Ct. at 1493 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950)); *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) (due process requires that a plaintiff receive adequate notice and an opportunity to be heard "at a meaningful time and in a meaningful manner"). "The hearing, to be fair in the due process sense, implies that the person adversely affected was afforded the opportunity to respond, explain, and defend. Whether the hearing was fair depends upon the nature

of the interest affected and all of the circumstances of the particular case." *Gorman, supra,* 837 F.2d at 13.

131.    At no time did Defendants provide Plaintiff with these essential rights prior to their decision to terminate him and Plaintiff's punishment of termination was arbitrary and capricious.

132.    Based on Defendants' deprival of Plaintiff's due process rights and the resulting injuries to Plaintiff, neither Defendants' nor the State of South Carolina's procedures will provide Plaintiff with an adequate pre- or post-deprivation remedy to cure the erroneous deprivation of his protected liberty interests.

133.    Because the law is clearly established in this area, and because Defendants had (and have) fair warning that denying Plaintiff the above-stated liberty interests as well as a right to adequate notice and an adequate opportunity to be heard prior to his termination, was unconstitutional, Defendants are liable for violating Plaintiff's rights protected by the Fourteenth Amendment.

134.    The denial of constitutional rights is irreparable injury *per se,* and Plaintiff is entitled to temporary and permanent injunctive relief.  In addition, Plaintiff is entitled to damages to be determined by a jury.

135.    Defendants in their official capacities and in their individual capacties, all acting under color of law, deprived Plaintiff of his Fourteenth Amendment right to due process, which is guaranteed by the Constitution and laws of the United States as well as Article I, Section 3 of South Carolina's Constitution and the protected property interest provided by S.C. Code of Laws §16-17-560 all in violation of 42 U.S.C. § 1983.

136.    Defendants Chief Wells, Fulghum, and Does are also personally liable in their individual capacities for violating Plaintiff's Fourteenth Amendment rights for declaratory, temporary and permanent injunctive relief, and monetary damages including attorneys fees and costs.

137.     As a direct and proximate result of Defendants' deprival of Plaintiff's protected liberty interests in (1) his good name, reputation, and honor making it unlikely or impossible to gain other employment; (2) his First Amendment right to speak as a private citizen on matters of public concern without being discharged from public employment; and (3) his freedom of speech rights guaranteed by Article I, Section 2 of the South Carolina Constitution and S.C. Code of Laws § 16-17-560, Plaintiff has been, and continues to be, deprived of his First Amendment rights which is an irreparable harm; Plaintiff has been and continues to be deprived of his good personal and professional relationship making it unlikely or impossible to gain other employment which is an irreparable harm; Plaintiff has been and continues to be deprived of his employment resulting in lost wages, lost future wages, and lost health insurance and other benefits and loss of his EMT certification which is necessary for Plaintiff to find other employment as a firefighter which are all irreparable harms; and Plaintiff has suffered other injuries including, but not limited to, mental and emotional anguish and distress, extreme humiliation and embarrassment, and other economic and non-economic damages including attorney's fees and costs.

138.     Defendants acted with malicious intent to unlawfully injure Plaintiff, or with a callous or reckless disregard of the Plaintiff's Fourteenth Amendment due process rights.

139.     Accordingly, Plaintiff is entitled to an award of permanent injunctive relief, nominal, compensatory, and punitive damages as well as an award for attorney's fees, costs, and other actual damages in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

1.     Enter judgment on the merits of his claims in Plaintiff's favor;

2.     Compensatory damages in an amount to be proven at trial;

3.      Exemplary and punitive damages against Defendants in an amount awarded by the
        jury at trial;

4.      Immediate, temporary, and ultimately permanent injunctive relief rescinding
        Plaintiff's termination and immediately reinstating Plaintiff to his employment
        position with JCFR;

5.      Injunctive and declaratory relief to prevent future violations of Plaintiff's
        constitutional rights, and to declare policies complained of herein to be
        unconstitutional and void as written and as applied; and

6.      Attorney's fees and costs pursuant to 42 U.S.C. § 1988.


Dated: March 5, 2025                    Respectfully submitted,


                                        s/ David D. Ashley
                                        David D. Ashley
                                        (S.C. Bar #76206, U.S. District Court #10220)
                                        David@LeClercqLaw.com
                                        Ben Le Clercq
                                        (S.C. Bar #65754, U.S. District Court # 7453)
                                        Ben@LeClercqLaw.com
                                        Le Clercq Law Firm
                                        708 South Shelmore Blvd. #202
                                        Mount Pleasant, SC 29464
                                        Phone (843) 722-3523
                                        Fax (843) 352-2977
                                        *Counsel for Plaintiff*

VERIFICATION

I, Stephen Baske, do hereby declare under penalty of perjury, that the allegations set out in this

complaint are true to the best of my knowledge, information, and belief.

Date: 3/5/25        _____
                                Stephen Baske